IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Muhammed Gul,**<br>     Detainee,<br><br>**Abdul Hadi,**<br>     As the Next Friend of Muhammed Gul<br><br>*Petitioners*,<br><br>v.<br><br>**GEORGE W. BUSH**, *et al.*,<br><br>*Respondents*. | Civil Action No. 06-cv-01760 |

## NOTICE OF RECENT ACTIVITY IN GUANTÁNAMO CASES AND REQUEST FOR RULING ON MOTION FOR ENTRY OF AMENDED PROTECTIVE ORDER AND MOTION FOR ORDER REQUIRING 30-DAYS' NOTICE OF REMOVAL OF PETITIONER FROM GUANTANAMO

Petitioners respectfully submit this notice of recent activity in the Guantánamo cases in further support of their pending stay-and-abey motion and their opposition to the government's pending motion to dismiss and a request to the Court to rule on Petitioners' request for entry of the Amended Protective Order, which was included in their Opposition to Respondents' Motion to Dismiss, dated May 6, 2007 and Motion for Order to Respondents to Provide Counsel for Petitioners and the Court with 30-days Advance Notice of Any Intended Removal of Petitioner Gul from Guantanamo, dated March 6, 2007.

   A.   **Al Ginco**

In its *Al Ginco* order, issued on June 7, 2007, the D.C. Circuit (1) denied the government's motion to vacate this Court's orders requiring the government to provide the petitioners'

counsel with advance notice of any intended removal of the petitioners from Guantánamo, and (2) denied the government's motion to dismiss the habeas petitions. The Court stated:

> The district court may consider in the first instance respondents' motion to dismiss and petitioners' motions to stay and hold in abeyance, which are currently pending before the district court in the actions underlying these consolidated appeals.

(Ex. 1). The D.C. Circuit's order makes clear that this Court retains jurisdiction over this case unless and until this Court dismisses this case, and that this Court need not dismiss this case but may grant Petitioners' Motion to Stay and Abey the proceedings.

### B.   Boumediene/Al Odah

In *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), the D.C. Circuit ruled that the Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, 120 Stat. 2600 (2006), eliminated the jurisdiction of the federal courts to consider habeas actions by Guantánamo detainees, and that the Guantánamo detainees, as aliens outside the sovereign territory of the United States, lack constitutional rights and therefore lack standing to challenge the elimination of jurisdiction under the Suspension Clause. (*Boumediene* is consolidated with *Al Odah v. United States*).

On March 5, 2007, the *Boumediene* and *Al Odah* petitioners filed certiorari petitions in the Supreme Court seeking review of the D.C. Circuit's judgment. S. Ct. Nos. 06-1195 & 06-1196. On April 2, 2007, the Supreme Court denied the petitions. 127 S.Ct. 1478 (2007). On April 27, 2007, the petitioners filed rehearing petitions and motions to defer consideration of those petitions pending the petitioners' exhaustion of their remedies under the DTA. On June 4, 2007, the Supreme Court invited the Solicitor General to file a response to the petitioners' motions, a step that required the support of at least five Justices. The Solicitor General filed his response on June 19, 2007. The petitioners replied on June 22, 2007 and appended an affidavit of a military intelligence officer who was involved in the CSRT process, calling sharply into question the fairness of that process. (Ex. 2).

On April 11, 2007, the *Boumediene* and *Al Odah* petitioners asked the D.C. Circuit to hold the cases in abeyance and stay the mandate pending the Supreme Court's disposition of their certiorari petitions. On June 20, 2007, the D.C. Circuit denied the motions to hold the case in abeyance and stay the mandate. *Boumediene v. Bush*, D.C. Cir. Nos. 05-5062 & 05-5063; *Al Odah v. United States*, D.C. Cir. No. 05-5064. (Ex. 3). Under Fed. R. App. P. 41(b), the mandate issued on June 27, 2007.

On June 29, the Supreme Court reversed itself and granted the *Boumediene* and *Al Odah* petitioners' request for a rehearing, granted their petition for a writ of certiorari and vacated its earlier denial of such requests. (Ex. 4). Petitioners' opening briefs are due on August 24, 2007 with the government's response and petitioners' reply to follow. Subsequently, on July 3, the *Boumediene* petitioners filed in the D.C. Circuit court a motion to recall the mandate, which is now pending.

### C. Entering the Amended Protective Order is Necessary to Prevent Irreparable Harm to Petitioners' Claims.

Entering the Amended Protective Order, ("APO"), is necessary here in order to prevent irreparable harm. This Court should carefully protect the Petitioners by entering the Amended Protective order that has been entered to date in several similar habeas cases to assure that Petitioners are not prejudiced in their ability to challenge Petitioner Gul's detention in a potential habeas proceeding or, in the alternative, a DTA proceeding, as well as to preserve potential remedies before this Court. The APO and the client access provided therein, is absolutely critical for effectively pursuing Petitioners' remedies through a habeas or a DTA petition. Without the APO in place, there is no legal mail channel; there is no privileged communication between attorney and client; and visits to the base to meet in person with Petitioner Gul may be curtailed or eliminated. Absent the protections of the APO, counsel will be unable to adequately

prepare for either a habeas hearing or, in the alternative, provide the Court of Appeals with sufficient factual information to make a balanced and informed decision regarding the merits of Mr. Gul's potential DTA Petition.

The Supreme Court has now decided to hear the merits of the *Boumediene/Al Odah* petitions, that is, whether the petitioners, like all of the Guantanamo detainees, have the right to challenge their detention in federal court through a habeas hearing. In doing so, the Court reversed its prior decision, which had effectively affirmed the D.C. Circuit's decision to deny petitioners habeas rights. While the Supreme Court will not rule on the merits of the *Boumediene/Al Odah* petitions immediately, counsel for Petitioners need to be able to adequately prepare Petitioner Gul's case for the eventual habeas hearing or DTA proceeding. Such preparation needs to begin now as Mr. Gul has been detained without legal or factual justification for over five years. Counsel would like to be able to communicate confidentially with Petitioner Gul both by legal mail and in person. Without the entry of the APO, counsel is unable to do so, thereby destroying the effective legal representation to which Mr. Gul is entitled. Counsel has been waiting patiently for this Court to rule on the Motion for Entry of the APO and while it was previously reasonable to abstain from such ruling, it is now clear that the Supreme Court will rule soon on the scope of rights that all of the Guantanamo detainees deserve. Given the Supreme Court's initial denial of the petition for certiorari and then subsequent vacating and granting of the petition, it is more likely than not that the detainees, including Mr. Gul, will be entitled to some form of relief greater than that provided in a DTA proceeding. In any event, Petitioner Gul needs to begin preparing his case immediately and can not do so without the Amended Protective Order in place.

Furthermore, Respondents have signaled their intent to dramatically restrict prisoners' access to counsel, proposing a protective order at the Court of Appeals level that would, among

other things, require all legal mail from counsel to Petitioners to be first screened and redacted by Department of Defense employees. Secondly, under the proposed protective order, Department of Defense officials would have unilateral authority to decide whether to permit counsel to see the evidence used to justify a prisoner's enemy combatant designation Counsel in similar habeas cases have labored under extraordinary circumstances to cultivate relationships with their clients. The Government's proposed protective order in *Bismullah* is a naked attempt by the government to destroy that relationship and to impede prisoners and their counsel from challenging the factual bases for their detention and return to a pre-*Rasul* state of the world. In the case of Petitioner Gul, who has never had the opportunity to meet his counsel due to the delay in entry of the APO, the proposed protective order would deny him effective legal representation altogether.

In sum, ordering entry of the Amended Protective Order is critical to foreclosing Respondents from prejudicing Petitioners' ability to effectively challenge – at the District Court or Circuit Court level – his detention, which could go on indefinitely.

### G. Entry of the Order requiring Respondents to Provide Counsel for Petitioner and the Court with 30-day's advance notice of any intended removal of petitioner from Guantanamo is necessary to enable Petitioners' counsel to contest any such removal from Guantánamo and preserve the jurisdiction of the Court in this matter.

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioner's request meets the most fundamental purpose of preliminary injunctive relief, "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Petitioner will suffer irreparable harm if the injunction is denied;

(2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioners are likely to succeed on the merits of their claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

Petitioner stands to suffer immeasurable and irreparable harm – from to torture to possible death – at the hands of a foreign government. Transfer to another country, even if "only" for continued imprisonment, also circumvents Petitioner's right to adjudicate the legality of their detention in this Court. By contrast, Respondents, who have already held Petitioner for several years, are asked only to provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantánamo. Respondents can suffer no conceivable harm from complying with such a request.

Petitioner is likely to succeed on the merits of his claims. Petitioner has properly invoked the jurisdiction of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). Judge Green has already ruled that detainees in similar circumstances to Petitioner Gul have stated actionable claims under the Due Process Clause and the Geneva Conventions. For the United States Government to remove Petitioners to countries that would afford no such protections would be to flout Judge Green's ruling and defeat the Court's jurisdiction. Such a transfer would also violate basic international legal norms embodied not only in the Geneva Conventions but also in the International Covenant on Civil and Political Rights and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.

Finally, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioner from the Court's jurisdiction. No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely.

## Conclusion

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and enter the Amended Protective Order and the Order requiring Respondents to Provide Counsel for Petitioner and the Court with 30-day's advance notice of any intended removal of petitioner from Guantanamo.

Respectfully submitted,

/s/ John Thomas Ratliff

John Thomas ("Jack") Ratliff
Scott Sullivan
Kristine A. Huskey
Rule of Law in Wartime Clinic
University of Texas School of Law
727 East Dean Keeton St.
Austin, TX 78705
Tel: 512-232-4857
Fax: 512-471-6988

William Scanlan, Jr.
Schoenbaum, Curphy & Scanlan, P.C.
112 E. Pecan Street, Suite 3000
San Antonio, Texas 78205
Tel: 210-224-4491

Center for Constitutional Rights
Gitanjali S. Gutierrez
666 Broadway, 7th Floor
New York, NY 10012

Tel: 212-614-6485

*Counsel to Petitioners*